UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Parker D., | Case No.: 3:19-cv-01818-W-AHG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | **[ECF No. 19]** |

This matter comes before the Court for a Report and Recommendation ("R&R") on the parties' Joint Motion for Judicial Review. ECF No. 19. Plaintiff Parker D. ("Plaintiff") appeals the final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. Plaintiff brings his appeal pursuant to 42 U.S.C. § 405(g).

After a thorough review of the parties' submissions, the administrative record, and applicable law, the undersigned recommends that the Court **REVERSE** the Commissioner's denial of disability insurance benefits and **REMAND** the case for further administrative proceedings.

# I.   **PROCEDURAL BACKGROUND**

On December 8, 2015, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning December 15, 2013. *See* Certified Administrative Record ("AR") 65, 169, ECF No. 14-5. Plaintiff's application was denied initially on March 17, 2016, and again upon reconsideration. AR 65-77, 79-93. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on March 9, 2018. AR 42-64, 112-13.

On September 12, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled and denying disability insurance benefits. AR 20-35. Plaintiff filed a request for review, but the Appeals Council denied review on July 26, 2019 (AR 9-14), making the ALJ's opinion the final decision of the Commissioner. *See* 42 U.S.C. § 405(h).

Plaintiff filed this action on September 20, 2019, against Defendant Andrew Saul, Commissioner of Social Security ("Defendant"), seeking judicial review of the denial of his application for social security disability insurance benefits.  ECF No. 1. Defendant filed the Administrative Record on January 14, 2020.  ECF No. 14.

# II.   **SUMMARY OF ALJ'S FINDINGS**

The ALJ first determined Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. AR 23, 25. Accordingly, the relevant period for the disability analysis is the alleged disability onset date of December 15, 2013, through the date last insured of September 30, 2016. Thereafter, the ALJ performed the required five-step sequential evaluation process governing disability claims under the Social Security Act: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe"; (3) whether the claimant's impairments meet or equal one of the listed impairments; (4) whether the claimant can still perform his past relevant work, given his residual functional capacity, despite his impairment(s); and (5) if the claimant cannot perform past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1520(a)(4). The five steps are

addressed in order, but the ALJ is not always required to go through all five steps of the process. Specifically, an affirmative answer at steps one or four (whether the claimant currently is engaged in substantial gainful activity or can perform past relative work), or a negative answer at step two (whether the claimant has an impairment or combination of impairments that is severe), immediately would lead to a finding of non-disability, and the analysis would stop there. Conversely, an affirmative answer at step three (whether the claimant's impairments meet a listing) immediately would lead to a finding of disability, also ending the analysis. *Id.*

At step one of the five-step process, the ALJ determined that Plaintiff did not engage in substantial gainful activity ("SGA") from his alleged disability onset date of December 15, 2013, through his date last insured of September 30, 2016. AR 25. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." C.F.R. § 404.1572(b).

At step two, the ALJ must determine whether Plaintiff has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). A "severe" impairment is one that significantly limits physical or mental ability to do basic work activities. *Id.* The ALJ concluded the Plaintiff had the following "severe" impairments: degenerative disc diseases, tremor, headache, degenerative joint disease, chronic pain, depression and anxiety. AR 25.

At step three, the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I ("the listings"). The listings describe impairments that the Social Security Administration ("SSA") considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant's impairment may also be considered "medically equivalent" to a listed impairment if it is at least equal in

1  severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). If a
2  claimant's impairments meet or medically equal any of the listings, the ALJ will find the
3  claimant disabled. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ concluded that Plaintiff did
4  not have an impairment or combination of impairments that met or medically equaled the
5  severity of any of the listings. AR 25.

6      Before considering whether Plaintiff can perform past relevant work at step four, the
7  ALJ first must determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R.
8  § 404.1520(e). A claimant's RFC is ". . . the most [the claimant] can still do despite [his]
9  limitations." 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th
10 Cir. 2017). A claimant's RFC is based on all relevant evidence in the case record. 20 C.F.R.
11 § 404.1545(a)(1).

12     Based on his evaluation of the medical and opinion evidence in the record, the ALJ
13 determined that, through the date last insured, Plaintiff had the following RFC:

14          To perform light work as defined in 20 CFR 404.1567(b). Specifically,
15      the claimant can lift and/or carry ten pounds frequently, twenty pounds
        occasionally; he can stand and/or walk for four hours out of an eight-hour
16      workday; he can sit for six hours out of an eight-hour workday; he can
        frequently reach, handle and finger; he can occasionally reach over head, and
17      do postural activities except he is not to climb ladders, ropes or scaffolds; he
        is to avoid all exposure to hazards; he can have occasional interaction with
18      coworkers or supervisors; he is to have no contact with the public; and he is
19      limited to simple repetitive tasks.
20

21 AR 28. In reaching this conclusion, the ALJ considered all symptoms of Plaintiff's
22 medically determinable impairments "and the extent to which these symptoms can
23 reasonably be accepted as consistent with the objective medical evidence and other
24 evidence," based on the requirements provided in 20 C.F.R. § 404.1529 and Social Security
25 Ruling ("SSR") 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (providing guidance on
26 how the Agency evaluates statements regarding the intensity, persistence, and limiting
27 effects of symptoms in disability claims). AR 28.
28 ///

The ALJ further concluded that, although Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 29. Specifically, the ALJ evaluated Plaintiff's description of symptoms related to his allegedly disabling conditions: "chronic fatigue syndrome, fibromyalgia, depression, lumbar spine impairment, social and generalized anxiety disorder, and chronic pain." AR 28. He noted Plaintiff's testimony that he stopped working due to "weight loss, anxiety, and sleep problems" and claim that in the months after he stopped working, Plaintiff stayed in bed 90% of the time due to extreme fatigue. *Id.* The ALJ further considered testimony that Plaintiff's symptoms were at their worst in 2014 and have improved with medication, but that Plaintiff still spends a great deal of time in bed due to back pain. *Id.* He noted that Plaintiff "described tremors in his hands that medication has helped improve as well with memory." *Id.* Finally, the ALJ highlighted Plaintiff's statements that dietary changes and meditation helped his symptoms, but that his worst symptoms—fatigue, lower back aches, difficulty thinking clearly, and headaches—remained. *Id.*

Despite these alleged impairments, the ALJ concluded that Plaintiff "has engaged in a somewhat normal level of daily activity and interaction." AR 29. He highlighted that Plaintiff admitted engaging in activities of daily living such as:

> he takes daily walks, watches television, visits friends to talk and play games, can play tennis thirty to sixty minutes, spends approximately 30 minutes at a time on a computer, and runs about thirty minutes a day. In a function report, the claimant acknowledged he lives with family, has no problem with personal care, prepares meals, does laundry, washes dishes, does light cleaning, drives, can go out alone, shops in stores and on the computer, can handle his finances, goes to friend's houses once a week, goes to the movies, and can follow instructions with focus (Exhibits 4E and 6E). He told Dr. Ibraheem he runs errands, manages his own money, and has good relationships with family (Exhibit 9F, p. 5).

*Id.* In light of this evidence, the ALJ concluded that the physical, mental, and social requirements of these tasks "replicate those necessary for obtaining and maintaining employment." *Id.*

The ALJ also discounted a third-party functions report submitted by Plaintiff's mother, noting that (1) her statements were not made under oath, (2) she is not a medical professional competent to make a diagnosis or argue that the severity of Plaintiff's symptoms impaired his ability work, (3) she has a familial interest in seeing Plaintiff receive benefits, and (4) her statements are not supported by the clinical or diagnostic medical evidence. *Id.*

With regard to the medical evidence, the ALJ concluded that the medical findings did not support finding limitations greater than those included in his RFC assessment. *Id.* In particular, he noted: (1) a December 2013 electromyogram, nerve conductive study of the lower extremities was normal, (2) Plaintiff reported on April 22, 2014, that his headaches improved with aspirin or ibuprofen and his tremors "markedly improved" with medication, (3) his April 28, 2014 brain magnetic resonance imaging ("MRI") and June 13, 2014 cervical spine were normal, (4) his neurological exam was normal and he described is headaches as mild in October of 2014, (5) on November 7, 2014, a lumbar spine MRI "revealed a four-millimeter right paracentral disc protrusion at L5-S1," but Plaintiff had an unremarkable MRI of the thorax, (6) a note from February 16, 2015, indicated great improvement of diffuse myalgias and subjective weakness with medication and a neurological exam was within normal limits, (7) Plaintiff "denied fatigue, chest pain and was compliant with medication on April 17, 2015" and tested negative for autoimmune diseases, (8) On June 18, 2015, Plaintiff stated that, for the most part, he felt well and his sleep was stable and on July 30, 2015, Plaintiff denied experiencing any syncope or seizure activity, (9) an August 14, 2015 note indicated that myalgia and myositis improved with medication, (10) on April 19, 2016, Plaintiff reported that his mild, right hand tremor did not interfere with activities of daily living or require more medication, and the record reflected a normal neurological and rheumatological work up, (11) Plaintiff admitted on

May 24, 2016, that his migraines were rare, (12) x-rays of the sacroiliac joints, lumbar spine, and bilateral knees were unremarkable, as was a cervical spine CR and a thoracic x-ray on May 31, 2016, which showed only slight levoscoliosis, (13) a pelvic x-ray "identified mild bilateral hip joint space narrowing, and bilateral cam deformities, which are associated with femoral acetabular impingement," (14) a July 20, 2016 EMG/NCS "indicated moderate left L5/S1 radiculopathy but it was unlikely he had radiculopathy on the right, and (15) Plaintiff noted on September 14, 2016, that we was doing "good" on his treatment plan and was able to perform activities of daily living. AR 30. The ALJ concluded that Plaintiff generally had not "received the type of medical treatment one would expect for a totally disabled individual and [Plaintiff's] alleged loss of function [was] not supported by objective medical findings." AR 29.

In making his RFC determination, the ALJ also considered opinion evidence in accordance with 20 C.F.R. § 404.1527. The ALJ afforded little weight to the opinion of treating psychiatrist Shayna Walker, M.D., who provided a disability statement due to probable fibromyalgia and mental conditions in 2015 and who completed an RFC questionnaire on March 14, 2017. AR 32. He felt Dr. Walker did not provide objective clinical or diagnostic findings to support the proffered functional assessment and that her opinion was inconsistent with the record as a whole, including Plaintiff's admitted activities of daily living. *Id.*

The ALJ gave great weight to the opinion of consultative psychiatric examiner Laja Ibraheem, M.D., who conducted an examination on July 23, 2016. AR 31-32. Dr. Ibraheem opined that plaintiff suffered mild to moderate limitations, and the ALJ concluded this opinion was "well-supported by objective, medically acceptable clinical or laboratory diagnostic techniques" and was "largely consistent with the record as a whole." AR 32.

The ALJ gave significant weight to the opinion of Eric Anderson, M.D., Ph. D., an impartial medical expert, who reviewed the medical records and offered his opinion. AR 30-32. Dr. Anderson opined that Plaintiff's impairments would limit him to lifting and/or carrying twenty pounds frequently and fifty pounds occasionally, standing and/or walking

for eight hours in an eight-hour workday, and sitting for eight hours in an eight-hour workday. AR 31. While acknowledging that a non-examining source may never be given controlling weight, the ALJ concluded that Dr. Anderson's opinion was entitled to significant weight because he is a specialist, he understands social security disability programs and the evidentiary requirements, he was aware of all of the evidence in the record, and his opinion was "well-supported by the objective medical evidence." AR 32. However, because the ALJ gave "significant weight" to Plaintiff's subjective complaints and found a light limitation, he only gave Dr. Anderson's opinion significant weight. *Id.*

Finally, the ALJ afforded great weight to the opinions of "mental State agency review physicians who opined mild to moderate limitations" based upon review of the entire medical record. AR 33.

At step four, the ALJ had to determine whether, given his RFC, Plaintiff could perform his relevant past work. *See* 20 C.F.R. § 404.1520(f); AR 33. Plaintiff's past relevant work included the occupations of (1) laborer, (2) general clerk, (3) film rental, (4) auto, (5) packing line, and (6) cable puller. *Id.* Based on the limitations in Plaintiff's RFC, the ALJ found that Plaintiff would be unable to perform any of his past relevant work. *Id.*

The ALJ then proceeded to step five, where the burden shifts to the ALJ to show that Plaintiff can perform other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). Here, based on the vocational expert's ("VE") testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including the jobs of bench assembler, garment bagger, and inspector. AR 33-34. Consequently, the ALJ found Plaintiff not disabled at step five. AR 34.

///

///

///

///

### III.   **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If so, the Court must affirm the Commissioner's decision. *Id.*

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and also is responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) ("[w]here evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence") (internal citation omitted).

The Court also may overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 ("[a] decision of the ALJ will not be reversed for errors that are harmless").

## IV.  **DISCUSSION**

Plaintiff raises three grounds for reversal in the joint motion: (1) that the ALJ erred by failing to evaluate whether Plaintiff had a medically determinable and severe impairment of fibromyalgia, (2) that the ALJ did not follow the treating physician rule, and (3) that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. ECF No. 19 at 2-3. Defendant contends the ALJ's decision is supported by substantial evidence, free of legal error, and should be affirmed. *Id.* at 54.

### A. **The ALJ Erred at Step 2 and the Error was not Harmless**

Plaintiff alleges the ALJ erred at step two of the sequential evaluation process by failing to consider whether his fibromyalgia constituted a medically determinable impairment ("MDI") and, if so, whether it was severe. ECF 19 at 3. At step two, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "[T]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen,* 482 U.S. at 153–54).

There is no indication in the ALJ's written decision that he considered fibromyalgia at all at step two. Plaintiff consistently listed fibromyalgia as a reason he could not work in his disability application and updated disability reports, as well as listing it as the basis for seeking medical treatment and the condition underlying his Lyrica prescription (AR 193, 196-98, 261-62, 271-73, 280, 282). Additionally, in a March 2, 2018 letter to the presiding ALJ from Plaintiff's advocate, the advocate listed "Step Two" in bold and then wrote "Mr.

[Parker D.] does indeed suffer from a medically determinable impairment that is severe, including: … Fibromyalgia." AR 290. The advocate then cited numerous medical exhibit numbers supporting this claim. *Id.* While the ALJ will not rely on a claimant's allegations in finding that the person has an MDI, 20 C.F.R. § 404.1521, all of these instances served to put fibromyalgia on the ALJ's radar. Furthermore, treating physicians Alicja Steiner, M.D and Dr. Walker both discussed the fact that Plaintiff was chronically in pain and both opined that Plaintiff would require multiple breaks each day to rest. AR 314, 712. Plaintiff also regularly reported needing to take long breaks to nap and to recover from any physical activity. This evidence all suggests fibromyalgia was more than a "slight abnormality" that had much more than "a minimal effect on the ability to do basic work activities.'" *Webb*, 433 F.3d at 686.

At that point, it was incumbent upon the ALJ to evaluate the medical evidence. The ALJ is to look at the record for evidence that the claimant's impairment resulted "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The ALJ also is to consider whether the impairment was "established by objective medical evidence from an acceptable medical source." *Id.* At the time Plaintiff filed his claim, licensed physicians were considered "acceptable medical source[s]," but physicians' assistants and chiropractors were considered "other sources."[1] 20 C.F.R. § 404.1513(a), (d)(1).

In this case, Defendant argues that Plaintiff does not have a diagnosis from an "acceptable medical source" because only Mr. Incelda, a physician's assistant, and John Michaels, D.C. actually diagnosed him with fibromyalgia. ECF No. 19 at 14-15. This

---

[1] New final rules governing the evaluation and weighing of medical evidence went into effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017). However, claims filed prior to that date (such as Plaintiff's) are governed by the old rules. The Court, therefore, will rely in its opinion on the rules in effect during Plaintiff's period of disability.

argument is problematic for two reasons. First, under certain circumstances, more weight may be given to "the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." 20 C.F.R. § 404.1527(f)(1). Second, Anchi Wang, M.D.—an acceptable medical source—assessed Plaintiff on April 19, 2016 as having fibromyalgia, continued Lyrica as treatment for it, and provided a "[r]eferral to see Pain management for management of fibromyalgia." AR 521-22. Dr. Steiner, the pain specialist and an acceptable medical source[2], examined Plaintiff on May 24, 2016. AR 588-590, 712. She assessed him as having fibromyalgia, in addition to other conditions, and (1) noted that "pain is affecting quality of life and daily activities performance," (2) determined that he had trigger points and that "[t]rigger point injections [should] be considered in the future," and (3) advised Plaintiff to "[a]void heavy lifting or repetitive motion of the affected spine areas and joints as well as axial loading activities, take frequent breaks." AR 712. She scheduled a follow-up appointment for two weeks later and continued to treat Plaintiff. *Id.* Likewise, Dr. Walker—also an acceptable medical source—opined that Plaintiff had "probable fibromyalgia." AR 408. While the ALJ may have questioned the consistency or sufficiency of these diagnoses, failing to find that a disorder constitutes an MDI at step two requires "the total absence of objective evidence of severe medical impairment," which is not the case here. *Webb*, 433 F.3d at 688.

And again, the Court can only guess at the ALJ's reasoning, because there is no analysis whatsoever at step two. In his subsequent analysis, the ALJ highlights various pieces of "objective medical evidence," but does not consider either of the two acceptable methods for evaluating claims of fibromyalgia. As Defendant acknowledges, Social Security Ruling ("SSR") 12-2p explains how the SSA evaluates whether a claimant has

---

[2] Defendant acknowledges that Dr. Steiner is an acceptable medical source. ECF No. 19 at 16.

demonstrated sufficient evidence of an MDI of fibromyalgia. ECF No. 19 at 13-14. The first set of criteria were established by the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia. *SSR 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P (S.S.A. July 25, 2012). Under these criteria, the SSA may find that an individual has an MDI of fibromyalgia if he has all three of the following:

> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist. [list of specific tender point sites omitted]
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

*Id.* The alternate set of criteria are drawn from the 2010 ACR Preliminary Diagnostic Criteria, which require that the claimant have all three of the following:

> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

*Id.* Though Plaintiff may or may not have satisfied either set of criteria, the ALJ erred by never conducting, or even referencing, the analysis. While Defendant provides many arguments for why the ALJ may have determined under one or both of these tests that the record did not contain sufficient evidence to support an MDI of fibromyalgia, the ALJ himself did not mention the tests or assess the evidence of this diagnosis. This Court may only review reasons the ALJ actually put forth to support his decision. *See Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (reconfirming that the district court is constrained to review the specific reasons the ALJ actually asserted and cannot affirm a denial of benefits based on a ground the agency did not actually invoke); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); *see also Bentley v. Saul*, 817 F. App'x 424, 426 (9th Cir. 2020) (remanding because the ALJ erred at step two by failing to mention or "make a determination as to whether [claimant's] diagnosed impairments of Borderline Personality Disorder ("BPD"), Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Disorder ("ADHD"), and ulnar neuropathy were severe or non-severe"). Accordingly, the Court finds that the ALJ erred at step two.

Despite these deficiencies, because the ALJ went on to consider Plaintiff's claim at steps three through five based on other MDIs, the Court will consider whether the ALJ's error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that the ALJ's failure to list claimant's bursitis at Step 2 was harmless because the ALJ extensively discussed his bursitis, and the limitations posed by it, at Step 4). At step three, the ALJ's task was to determine whether Plaintiff's impairment or combination of impairments met or medically equaled the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I ("the listings"). 20 C.F.R. §§ 404.1525-404.1526(a). As he did not consider Plaintiff's fibromyalgia at Step 3, the Court cannot say the error was harmless at this stage.

///

In determining Plaintiff's RFC at Step 4, the ALJ was to consider "all the relevant evidence in [Plaintiff's] case record" to determine the most he could do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The regulations further required that the ALJ consider all MDIs of which he was aware, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The ALJ was to "consider any statements about what [Plaintiff could] still do that have been provided by medical sources, whether or not they are based on formal medical examinations," as well as "consider descriptions and observations of [Plaintiff's] limitations from [his] impairment(s), including limitations that result[ed] from [his] symptoms, such as pain." 20 C.F.R. § 404.1545(a)(3).

In his decision, the ALJ stated that he considered all symptoms of Plaintiff's MDIs, which would not have included those of his fibromyalgia, except to the extent they overlapped those of other MDIs. He further considered the extent to which Plaintiff's symptoms were consistent with objective medical evidence in the record, which also does not entirely encompass consideration of fibromyalgia because it is a diagnosis of exclusion (i.e. objective medical tests are unlikely to show evidence of the disease).[3] The ALJ did,

---

[3] As the Ninth Circuit explained:

> Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke*, 379 F.3d at 589. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting Yunus, *supra*, at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients'

however, consider Plaintiff's description of his fibromyalgia symptoms in concluding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" AR 28-29. But, the ALJ did not specifically reference, discuss, or weigh the opinions of two of Plaintiff's treating physicians—Drs. Wang and Steiner. Thus, the Court does not have before it the ALJ's consideration of evidence regarding what limitations these physicians found to stem from Plaintiff's impairments. And, because he never acknowledged that any of Plaintiff's treating physicians had diagnosed Plaintiff with fibromyalgia, it is not clear that the ALJ considered the medical evidence in light of the confounding symptoms the disease causes and the unique diagnostic methods utilized. *See Revels*, 874 F.3d at 662 ("[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and *Benecke* [*v. Barnhart*, 379 F.3d 587 (9th Cir. 2004)] . . .[t]he failure to do so is error").

Defendant cites to *Miner v. Berryhill*, 722 F. App'x 632, 633 (9th Cir. 2018) in arguing that, because the ALJ found that Plaintiff's other ailments were severe impairments and moved on to the other sequential evaluation steps, the error was harmless. But the court in *Miner* acknowledged that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Miner*, 722 F. App'x at 633 (quoting SSR 96-8p, 1996 WL 374184 (July 2, 1996)). Here, Dr. Steiner opined that Plaintiff would have to "take frequent breaks." AR 712. Under the heading "pain," in the same medical record where she assessed Plaintiff as having

---

reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*

*Revels*, 874 F.3d at 656-57 (also noting that symptoms of fibromyalgia wax and wane).

3:19-cv-01818-W-AHG

1    fibromyalgia, Dr. Wang noted that Plaintiff "[s]till has fatigue and cannot do a whole day

2    work." AR 520. When the ALJ included in his hypothetical to the VE the limitation of

3    someone being off task "say 20 percent," the VE said there would not be any sustainable

4    work (i.e. it would lead to termination). AR 63. Thus, these medical opinions and records

5    conflict with the RFC and are material to the ALJ's determination. Yet the ALJ did not

6    address them or explain why he was discounting them. In light of the totality of these

7    omissions, the Court cannot say that the ALJ's error was harmless. *See Marsh v. Colvin*,

8    792 F.3d 1170, 1173–74 (9th Cir. 2015) (remanding "where the ALJ did not even mention

9    [a treating physician's] opinion that Marsh's chronic bursitis rendered her 'pretty much

10   nonfunctional,'" because the court could not "'confidently conclude' that the error was

11   harmless").

12        **B. <u>The ALJ Erred in Discounting the Treating Physician's Opinion</u>**

13        In a related claim of error, Plaintiff asserts that the ALJ failed to follow the treating

14   physician rule. ECF No. 19 at 20. The Social Security Administration favors treating

15   physician's opinions over those of non-treating physicians. *See* 20 C.F.R. § 404.1527. "If

16   a treating physician's opinion is 'well-supported by medically acceptable clinical and

17   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

18   in [the] case record, [it will be given] controlling weight.'" *Orn*, 495 F.3d at 631 (quoting

19   20 C.F.R. § 404.1527(d)(2)). If an ALJ wishes to reject a treating physician's opinion, and

20   the opinion is not contradicted by another doctor, the ALJ must provide "clear and

21   convincing" reasons for doing so, supported by substantial evidence in the record. *Lester

22   v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). When the treating physician's

23   opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate

24   reasons," supported by substantial evidence in the record, for rejecting the treating doctor's

25   opinion. *Id.* "This can be done by setting out a detailed and thorough summary of the facts

26   and conflicting clinical evidence, stating his interpretation thereof, and making findings."

27   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes,* 881 F.2d at 751).

28   The ALJ may not simply offer conclusory statements—[h]e must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir.1988)). Notably, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn*, 495 F.3d at 632.

Under circumstances where the treating physician's opinion is not entitled to controlling weight, it still is entitled to deference. *Id.* (citing S.S.R. 96–2p at 4, 61 Fed. Reg. at 34,491). The ALJ then is instructed to consider the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6)[4] to determine what weight to accord the treating physician's opinion. These factors include: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical signs, laboratory findings, and other relevant evidence the medical source provides in support of their opinion, (4) the consistency of the medical opinion with the record as a whole, (5) the extent to which a specialist's medical opinion relates to medical issues in his or her area of specialty, and (6) any other facts the claimant or others bring to the SSA's attention, or that the SSA is aware of, that tend to support or contradict the medical opinion, such as "the amount of understanding of [the SSA's] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in [the claimant's] case record." 20 C.F.R. § 404.1527.

Here, Plaintiff received treatment from Dr. Walker, a psychiatrist, from May 29, 2015 to March 3, 2018. ECF No. 19 at 20 (citing AR 395-99, 357-61, 370-73, 378-81, 389-93, 416-20, 528-32, 1197). The ALJ stated that Dr. Walker "made a disability statement due to probable fibromyalgia and mental conditions in 2015 and filled out a residual functional capacity questionnaire on March 14, 2017." AR 32. However, the ALJ

---

[4] This rule applies to claims filed before March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017).

afforded her opinion "little weight," asserting that her opinion was "not supported by objective evidence" and "inconsistent with the record as a whole." *Id.* In particular, he felt that she primarily summarized Plaintiff's subjective complaints, diagnoses, and treatment, "but did not provide objective clinical or diagnostic findings to support the functional assessment." *Id.* He also found it inconsistent with the objective findings discussed earlier in his decision that "showed stable improvement with medication and normal mental status evaluations." *Id.* Finally, he determined that the opinion was inconsistent with Plaintiff's activities of daily living. *Id.* He then went on to afford "significant weight" to the opinion of non-examining medical expert Dr. Anderson, "great weight" to examining physician Dr. Ibraheem's opinion, and "great weight" to the opinions of two state agency consultative, psychiatric physicians (G. Rivera-Miya, M.D. and K. Loomis, M.D.). *Id.* at 32-33.

It appears the ALJ concluded that Dr. Walker's opinion was contradicted by the opinions of Dr. Anderson, Dr. Ibraheem, and the state agency physicians, in which case he was required to offer specific and legitimate reasons supported by substantial evidence in the record (in the form of "a detailed and thorough summary of the facts and conflicting clinical evidence" and his interpretations and findings) for rejecting Dr. Walker's opinion. *Reddick*, 157 F.3d at 725.

The primary issue seems to be that if the ALJ credited Dr. Walker's opinion regarding Plaintiff's inability to work for 8 hours without frequent rest breaks, and his experience of depressive episodes that result in decompensation, social isolative behaviors, and increased fibromyalgia pain (AR 853-57), then Plaintiff would not be able to work. In her October 2015 narrative report, Dr. Walker noted Plaintiff's mental limitations ("inability to sustain attention, maintain concentration, and poor social interactions") and opined that he would be "unable to maintain competitive employment." AR 314. In a March 2017 Mental Impairment Questionnaire, Dr. Walker opined that Plaintiff had a "marked" (defined as "[s]ymptoms constantly interfere with ability (constant – more than 2/3 of an 8-hr. workday)") degree of limitation in his ability to "[p]erform at a consistent pace without rest periods of unreasonable length or frequency." AR 856. She also noted

marked limitations in his ability to "[a]ccept instructions and respond appropriately to criticism from supervisors," and to "[m]aintain socially appropriate behavior." *Id*. In addition, she noted "moderate-to-marked" ("[s]ymptoms frequently interfere with ability (frequent − 1/3 to 2/3 of an 8-hr. workday)") limitations in the ability to "[c]omplete a workday without interruptions from psychological symptoms." *Id*. She concluded that he likely would be absent from work as a result of his impairments "[m]ore than three times per month." AR 857.

Whether the ALJ provided sufficient reasons for discounting Dr. Walker's opinion presents a close issue. With regard to the ALJ's first reason for discounting her opinion, Plaintiff argues that the ALJ failed to cite to a single piece of contradictory clinical evidence in the record to support his analysis. ECF No. 19 at 23. Given that the ALJ found that Dr. Walker had not provided objective clinical or diagnostic findings, it would be hard to contradict a lack of evidence. He did, in fact, go on to find that the opinion was inconsistent with evidence in the record that Plaintiff showed stable improvement with medication. The ALJ does not highlight any records in particular in making this argument, so the Court is left to presume he was referring back to (1) where he noted Plaintiff's statements from Exhibit 3E that he had gotten better with medication, (2) medical records from Exhibit 20F, 6F, 1F, 3F showing improvement of headaches, tremors, myalgia and myositis, anxiety, and depression with medication (AR 28-31)), and (3) normal mental status evaluations (likely referring to where he highlighted neurological examinations within normal limits from Exhibits 3F-6F and 12F-13F (AR 30-31)). In other words, in providing the requisite "specific and legitimate reasons" for rejecting the treating physician's opinion, the ALJ summarized the medical findings and provided his interpretation that Plaintiff "showed stable improvement with medication," but did not provide an explanation of why Dr. Walker's interpretation of those same medical findings was incorrect. *See Reddick*, 157 F.3d at 725 (reconfirming that, in providing specific and legitimate reasons for rejecting a treating physician's opinion, the ALJ must explain why his interpretation, and not the treating doctor's, is correct).

Moreover, Plaintiff responds to this interpretation by pointing out that cherry-picked instances of improvement do not constitute substantial evidence to contradict a treating physician's opinion, particularly in the context of mental illness where patients may improve temporarily and then decompensate again. ECF No. 24 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (noting that such observations must be read in the context of the provider's overall diagnostic picture because occasional periods of improvement do not mean the person's impairment does not still seriously impair his ability to function in the workplace)). Plaintiff points out that even though Dr. Walker noted on October 29, 2015, that Plaintiff's anxiety was at "optimal treatment" (AR 392, 398, 419), she did not equate that with a finding that he could work. ECF No. 19 at 25. Rather, she noted that his medical concerns predominated at that point. AR 398. Additionally, it was *after* noting this finding that Dr. Walker completed her narrative reports explaining Plaintiff's mental imitations ("inability to sustain attention, maintain concentration, and poor social interactions") and her opinion that he was "unable to maintain competitive employment."[5] *Id.* (citing AR 314-16, 398).

The same borderline support infects the ALJ's additional basis for discounting Dr. Walker's opinion. The ALJ concluded that Dr. Walker's findings were inconsistent with Plaintiff's activities of daily living. A conflict between the treating physician's opinion and the claimant's daily activities indeed may serve as a specific and legitimate reason for rejecting a treating provider's opinion. *Ghanim*, 763 F.3d at 1162. However, while the activities the ALJ cites superficially show a claimant capable of some physical exertion and social interaction, the Court agrees with Plaintiff that the ALJ misconstrued the nature of Plaintiff's most compelling activities. The ALJ highlighted that Plaintiff "takes daily walks, watches television, visits friends to talk and play games, can play tennis thirty to

─────────────────

[5] It is important to note that, while the ALJ is not bound by a physician's opinion on the ultimate issue of disability, he cannot reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Reddick*, 157 F.3d at 725.

sixty minutes, spends approximately 30 minutes at a time on a computer, and runs about thirty minutes a day." AR 29 (citing Exhibits 4E and 6E). In fact, the records reflect that Plaintiff tries to "walk a couple miles a day, but can't always manage" and can walk "a few miles" before needing to rest for "several hours." AR 204, 208. Plaintiff reported that he "stopped jogging [be]cause of pain and fatigue and rarely play[s] tennis for same reason." AR 207. At the hearing, Plaintiff testified that he tries "to go on just some short little walks to try to keep my muscles from completely falling apart because walking for very short periods is easier for me than sitting or standing." AR 46-47. He meets up with a friend once a week "for like an hour or so" and "once every couple of months" he plays tabletop games" with friends, but has to "take a bunch of Tylenol" because he knows he is "going to be hurting a lot afterwards." AR 47. Having previously played tennis for six hours at a time because he loves it, Plaintiff testified that he now attends a clinic for thirty minutes to an hour where the pro feeds him balls and he hits them. AR 49. Likewise, Plaintiff testified that he used to run ten miles a day, four days a week, but now cannot run more than short distances because his legs start to feel "[l]ike they're swelling up and pressure starts to build up along [his] spine into [his] head." AR 49-50.

While the evidence in the record strikes a different tone than the ALJ's summary, the ALJ's description was not wholly inaccurate. Where the ALJ's interpretation of the evidence of a claimant's daily activities constitutes a rational interpretation, we must uphold it. *Burch*, 400 F.3d at 680–81; *see also Magallanes,* 881 F.2d at 750 ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). But, even if the Court accepts the ALJ's summary of Plaintiff's activities, this evidence does not refute Dr. Walker's opinion that Plaintiff has a "marked" limitation in his ability to "[p]erform at a consistent pace without rest periods of unreasonable length or frequency." Rather, it shows that he can engage in *some* physical activity, which in and of itself does not foreclose a finding of disability. *See Reddick*, 157 F.3d at 722 (explaining in a case where the claimant's "activities were sporadic and punctuated with rest" that "disability claimants should not be penalized for attempting to lead normal lives in the face

of their limitations"). None of the brief daily activities described by the ALJ refute Dr. Walker's opinion that, whether up and walking or sitting with friends, Plaintiff cannot persist for an eight-hour workday without frequent, and significant rest breaks.

Even if the Court finds the ALJ provided specific and legitimate reason for rejecting Dr. Walker's opinion, it is not clear that substantial evidence supports his RFC determination in light of the remaining medical opinions. Consultative psychiatric examiner, Dr. Laja Ibraheem, M.D., whose opinion was afforded "great weight" by the ALJ, concluded that Plaintiff would be moderately limited in his ability to "maintain concentration, *attendance*, and persistence," "*perform activities within a schedule and maintain regular attendance*," and "*complete normal workday/workweek without interruption* from psych based symptoms." AR 551-52 (emphasis added). Dr. Ibraheem's report does not define "moderate," but as a consultative examiner, he likely utilized the same scale provided by the SSA in the questionnaire Dr. Walker completed. It defined moderate as "[s]ymptoms occasionally interfere with ability" with "occasional" meaning "up to 1/3 of an 8-hr. workday." AR 856. Drs. Jacobs and Rivera-Miya also found that Plaintiff was "moderately limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 73, 89. Though Dr. Ibraheem did not opine one way or the other as to Plaintiff's ability to work as a result, Dr. Rivera-Miya concluded without explanation that Plaintiff nonetheless "is able to sustain at unskilled work for 40hr/wk" (AR 70) and Dr. Loomis likewise stated conclusively that Plaintiff "is able to maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple/unskilled tasks" (AR 85). These conclusions that he could maintain a 40-hour work week would seem at odds with symptoms that interfere with his ability to complete a normal workday up to one-third of the time. Likewise, they do not jibe with the vocational expert's testimony that if the ALJ's hypothetical included the limitation of someone being off task "say 20 percent," there

would not be any sustainable work (i.e. it would lead to termination). AR 63. Nowhere does the ALJ address these seeming inconsistencies.

Defendant argues that the ALJ's RFC sufficiently accounts for Plaintiff's moderate limitations because Ninth Circuit precedent supports the conclusion that a limitation to unskilled or simple, repetitive work accounts for moderate mental limitations. ECF No. 19 at 34. In support of this assertion, Defendant cites to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008) wherein the court upheld the ALJ's determination that a claimant, who was described by a treating physician as "'moderately limited' in her ability to 'to perform at a consistent pace without an unreasonable number and length of rest periods' and 'mildly limited' in several other mental functioning areas," could perform "simple, routine, repetitive sedentary work." *Stubbs-Danielson*, 539 F.3d at 1173. The court's rationale in accepting that the claimant could perform simple tasks (as opined by a state agency reviewing psychologist) despite these moderate limitations was that the treating physician did not specifically assess whether the claimant could perform unskilled work on a sustained basis. *Id.* at 11-73-74.

The Court finds that Defendant overstates the breadth of this holding. In upholding the ALJ's RFC of unskilled, sedentary work, the *Stubbs-Danielson* court specifically highlighted that the reviewing physician's opinion was consistent with the treating physician's conclusion that the claimant was "not significantly limited" in her ability to "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." *Id.* at 1174. Here, Dr. Ibraheem provided no saving conclusions suggesting Plaintiff can do any type of work on an extended basis or in accordance with a sustained, ordinary routine. To the contrary, he concluded that Plaintiff also is "moderately limited" in his ability to "maintain concentration, attendance, and persistence" and "perform activities within a schedule and maintain regular attendance." AR 551.

Likewise, none of the cases Defendant cites, which rely on *Stubbs-Danielson,* discuss a claimant who must take frequent breaks or naps. Moreover, the *Stubbs-Danielson*

court concluded that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174. That is not the case here where the RFC assessment conflicts with restrictions identified by Dr. Walker and Dr. Ibraheem.

An assertion that someone with moderate mental limitations can, in all circumstances, do unskilled work also is belied by the Social Security Administration's own Program Operations Manual System ("POMS"). Under the heading "Mental Abilities Critical For Performing Unskilled Work," it states that a claimant **must** be able to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (These requirements are usually strict.)." POMS DI 25020.010 Mental Limitations(B)(3)(i). It may be that the ALJ was aware of authority or reasons why Plaintiff could maintain the required pace despite universal findings that he was moderately limited in his ability to do so, but the ALJ did not explain them in his decision. Thus, his decision lacked substantial evidence to support discounting Dr. Walker's opinion and finding in his RFC that Plaintiff could sustain unskilled work (i.e. "simple repetitive tasks") for a 40-hour work week.

## C. <u>The ALJ Did not Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Testimony</u>

Plaintiff's final argument is that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. ECF No. 19 at 43-44. The ALJ found that Plaintiff's "statements about the alleged intensity, persistence, and limiting effects of [his] symptoms are inconsistent with the objective medical evidence because those allegations are greater than expected in light of the objective evidence of record." AR 28. He also concluded that Plaintiff was not credible because he "engaged in a somewhat normal level of daily activity and interaction" and because he "has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 29.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C.A. § 423(d)(5)(A). There must be some clinical or diagnostic evidence "which show[s] the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities" that reasonably could be expected to produce the alleged pain or other symptoms. *Id.* Assuming such a medical underpinning exists, the ALJ then will evaluate whether the claimant's symptoms (including pain) reasonably can be accepted as consistent with (1) objective medical evidence, such as medical signs and laboratory findings and (2) other evidence such as previous statements by the claimant, treating and non-treating sources, and other individuals "about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work," and ability to work. 20 C.F.R. § 404.1529(a).

In reviewing cases "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains," the district court must evaluate whether the ALJ provided clear and convincing reasons for his or her adverse credibility finding. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008). "The only time this standard does not apply is when there is affirmative evidence that the claimant is malingering," *id.*, which is not the case here.

The ALJ's first reason for discounting Plaintiff's testimony was that he found Plaintiff's claims about his symptoms inconsistent with the objective medical evidence. AR 28. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ begins his credibility determination by noting that Plaintiff alleges disability "due to chronic fatigue syndrome, fibromyalgia, depression, lumbar spine impairment, social and generalized anxiety disorder, and chronic pain." AR 28. He then goes on to address individual symptoms, noting that plaintiff's fatigue was worst in 2014 and has "gotten better with medication,"

26

but that Plaintiff still spends a lot of time in bed due to back pain. *Id.* He highlights that Plaintiff's hand tremors and memory issues also have improved with medication and that Plaintiff reported that dietary changes and meditation "helped his symptoms," though it is not clear to which symptoms he is referring. *Id.* Finally, the ALJ notes Plaintiff's report that fatigue, lower back aches, difficulty thinking clearly, and headaches are his worst symptoms. *Id.* But, he expresses difficulty in attributing the degree of limitation Plaintiff alleges to his medical condition "in view of the relatively benign medical evidence" discussed subsequently in the decision. *Id.*

Taking these symptoms individually, the Court finds there is objective evidence in the record supporting some of the ALJ's determinations. On April 22, 2014, Plaintiff reported that his headaches improved with aspirin or ibuprofen and he acknowledged on May 24, 2016, that his migraine headaches were rare. AR 30. Also on April 22, 2014, treatment notes indicate his tremors had markedly improved with medication and notes from April 19, 2016, show that his mild right hand tremor did not interfere with activities of daily living and that Plaintiff did not require more medication for it. *Id.* The ALJ cites records from July 30, 2015, indicating that Plaintiff's anxiety had improved and from December 17, 2015, showing improvement of his depression following a medication change. AR 31. For these symptoms, reviewed individually, the reasons relied on by the ALJ are supported by substantial evidence in the record. *See Gallant*, 753 F.2d at 1453 (requiring the court to uphold the ALJ's conclusion where the evidence is "susceptible of more than one rational interpretation").

With regard to Plaintiff's complaints of lower back pain, the ALJ highlighted a lumbar spine MRI that revealed a four-millimeter right paracentral disc protrusion at L5-S1 and EMG/NCS indicating moderate left L5/S1 radiculopathy. AR 30. He cites a September 14, 2016 medical record, which says Plaintiff is "doing good on current [treatment] plan and is able to perform ADLs." *Id.* However, that statement is listed under "reason for appointment." AR 685. Under the heading "General Examination" in the same record, it says "BACK: limited range of motion secondary to pain, lumbosacral tenderness,

lumbar tenderness, paraspinal muscle spasm on the LEFT, paraspinal muscle spasm on the RIGHT, sacroiliac joint tenderness, lumbosacral tenderness, cervical tenderness." AR 687. These significant clinical findings, in addition to the MRI and EMG/NCS results, support rather than contradict Plaintiff's reports of lower back pain. The Court, therefore, finds that the ALJ's reason for discounting Plaintiff's back pain is not supported by substantial evidence in the record.

Plaintiff points out that the ALJ primarily highlights negative objective testing, which does not account for a debilitating condition (fibromyalgia) that largely is characterized by a *lack* of diagnostic findings. ECF No. 19 at 45. Once again, the ALJ's failure to address Plaintiff's diagnosis of fibromyalgia complicates the analysis. "Fibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis.'" *Revels*, 874 F.3d at 663 (quoting *Benecke*, 379 F.3d at 590). Because symptoms may wax and wane and patients have good and bad days, "the Social Security Administration recommends looking at longitudinal records." *Id.* Here, the ALJ acknowledged Plaintiff's statements about fibromyalgia, extreme fatigue, and difficulty thinking clearly, but did not explain what evidence from the record contradicted these claims. "To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which* evidence contradicted that testimony.'" *Laborin*, 867 F.3d at 1155 (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). The only evidence the ALJ cited on this front is Plaintiff's own testimony that his fatigue improved with medication. AR 28. However, Plaintiff's testimony, taken as a whole, paints a different picture. Plaintiff testified that a few months after leaving his last job, he started having extreme fatigue and "overwhelming exhaustion," and spending about 90 percent of his day in bed. AR 45-46. The medication allowed him to "get out of bed without feeling like I was carrying a boulder

because there was a huge strain," but he still has episodes a couple times a week where he is so tired he feels like he is "falling into a coma" and naps for 1.5 to 5 hours. AR 46, 52. He also testified that he schedules activities, like doctor's appointments, at distant intervals because he is very tired by the time he gets home from each one. AR 53. As such, while it is true that Plaintiff's fatigue improved with medication, Plaintiff's remaining fatigue claims are not inconsistent with a disability allegation. And, to the extent fatigue and difficulty thinking clearly are part of his overall fibromyalgia, the ALJ did not address these complaints at all.[6] The Court, therefore, does not find the ALJ's reasoning as to Plaintiff's credibility on these issues is supported by substantial evidence in the record.

The ALJ's next reason for discounting Plaintiff's testimony is that he "engaged in a somewhat normal level of daily activity and interaction." AR 29. The ALJ lists the activities of daily living discussed in the previous section and notes that "the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment." AR 29. An ALJ indeed may consider inconsistencies between the claimant's testimony and his conduct as well as "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007). However, "[o]nly if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722. As discussed previously, Plaintiff admits making efforts to take walks, participate in tennis clinics, run errands, see friends, etc. But he consistently

---

[6] Defendant argues that Plaintiff puts the cart before the horse with this argument because "the record does not establish that Plaintiff's alleged fibromyalgia constituted a medically determinable impairment." ECF No. 19 at 49. The Court is not persuaded that the regulations support the ALJ ignoring fibromyalgia at step two and then using the lack of an MDI or diagnosis of fibromyalgia to justify ignoring or discounting its symptoms at every other stage of the decision (e.g. with regard to the treating physician's opinion and the claimant's subjective complaints).

explained in disability reports, to medical providers, and in his testimony that he only is able to engage in these activities for short periods of time and requires significant rest, and sometimes pain medication, afterwards. Thus, none of these activities are of a duration or pace that is inconsistent with Plaintiff's alleged limitations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)) ("[o]ne does not need to be 'utterly incapacitated' in order to be disabled"). Accordingly, they do not provide sufficient evidence for discounting his credibility.

The ALJ's final reason for discounting Plaintiff's symptom testimony is that he "has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 29. Evidence of conservative treatment may be a sufficient reason to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (upholding ALJ's discounting of claimant's credibility where claimant treated knee pain with over-the-counter pain medication). The ALJ also may take into consideration that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *but see Donald R. F. v. Saul*, No. 5:18-00158 ADS, 2019 WL 7938245, at *5 (C.D. Cal. Sept. 12, 2019) (finding that *Warre* did not discuss the use of pain medication and does not support "a finding that improvement of pain with daily prescription pain medications allows for a discounting of asserted pain symptoms by an ALJ"). In this case, the ALJ did not elaborate regarding what type of medical treatment one would expect for someone with Plaintiff's conditions. He also did not highlight any instances where Plaintiff failed to comply with any therapy or treatment recommendations made by his physicians.[7] The only example

_____

[7] Nor could he. The record reflects that Plaintiff followed up on a vast array of diagnostic and treatment recommendations including (1) undergoing electromyograms and nerve conduction studies; MRIs of his brain, spine, and thorax; x-rays of his sacroiliac joints, spine, thorax, pelvis, and knees; and a sleep study, (2) seeing specialists in neurology, psychiatry, rheumatology, pain, and physical therapy, (3) being evaluated for, among other

Defendant points to in support of the ALJ's reasoning is the note from April 2016 indicating that Plaintiff reported that his pain was "fairly well-controlled" with Lyrica. ECF No. 19 at 50 (citing AR 528). Defendant relies on *Warre* in arguing that impairments controlled with medication are not disabling, but does not provide any authority for extending this holding to prescription pain medications. As the court explained in *Donald R.F.*, SSA regulations allow consideration of "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." *Donald R. F.*, No. 5:18-00158 ADS, 2019 WL 7938245, at *5 (quoting 20 C.F.R. § 404.1529(c)(3)(iv)). However, '[t]he case law citing to this regulation have done so in finding pain symptoms to be non-severe either because of the use of ***no medication*** or the use of only ***non-prescription pain medications***." *Id.* (emphasis added). The *Donald R.F.* court thus found no support for an ALJ relying on "the daily use of prescription strength pain medication, such as morphine and hydrocodone, to regulate but not eradicate pain" to discount a claimant's allegations of pain. *Id.* Here too, Defendant has not offered any authority for extending the *Warre* holding and this Court finds it inappropriate to do so. Thus, the Court finds that substantial evidence does not support this reason put forth by the ALJ for discounting Plaintiff's symptom allegations.

Because the Court concludes that some, but not all, of the ALJ's reasons supporting his adverse credibility finding are invalid, the Court must assess whether the ALJ's reliance on such reasons was harmless error. *Carmickle*, 533 F.3d at 1162. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055; *see also Batson,* 359 F.3d at 1197 (finding the ALJ's error in assuming that the claimant was sitting while watching television to be harmless in light of other substantial evidence supporting his finding that the claimant was not credible because it did "not negate the

---

things, chronic pain syndrome, autoimmune diseases, epilepsy, depression, neuropathy, obstructive sleep apnea, and social anxiety disorder, (4) trying neurofeedback training, aqua therapy, and physical therapy, and (5) taking a laundry list of prescription medications under the care of specialists.

validity of the ALJ's ultimate conclusion"). Here, of Plaintiff's four worst symptoms—fatigue, lower back aches, difficulty thinking clearly, and headaches—the ALJ provided clear and convincing reasons for discounting only one, headaches. If Plaintiff's testimony about his significant fatigue and back pain were fully credited and included in his RFC, he may well have been found disabled, particularly in light of the VE's testimony. Accordingly, the Court cannot say that the ALJ's errors were harmless.

## V.   **CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ erred in denying Plaintiff social security disability benefits and that his findings were not supported by substantial evidence in the record. The undersigned, therefore, **RECOMMENDS** that the Commissioner's determination that Plaintiff is not disabled be **REVERSED** and the case be **REMANDED** for further administrative proceedings consistent with the opinion of the Court.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **January 28, 2021**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **February 11, 2021**.

**IT IS SO ORDERED.**

Dated:  January 13, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:19-cv-01818-W-AHG